**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) Criminal No. 04-10278-RGS |
| v. | ) |
| | ) |
| PAUL MARDA, | ) |
|     Defendant. | ) |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S**
**MOTION TO SUPPRESS STATEMENTS**

The United States of America, by and through its attorneys Michael J. Sullivan, United States Attorney for the District of Massachusetts, and Suzanne Sullivan, Assistant U.S. Attorney, hereby opposes the motion to suppress by defendant Paul Marda, a/k/a Nathaniel Robinson ("Marda"). Marda seeks to suppress statements that he voluntarily made to the Boston Police Department on March 12, 2004, after receiving his <u>Miranda</u> rights at the booking area.

Marda was under arrest at that time he made the statement(s) for the instant firearm and narcotics offense. He was transported to the Boston Police Department where he was orally advised in English of his Fifth Amendment rights pursuant to <u>Miranda v. Arizona</u>, 384 U.S. 435, 468-469 (1966) by Sergeant Detective Al Terestre. He then gave a self-serving statement in English acknowledging that he had the tech [9 mm. firearm] due to problems he had with a group down the street and needed it for protection' (see Detective England's police report identified as Exhibit B in Defendant's Motion to Suppress). Marda now seeks

to suppress the statement contending that it was involuntary because he was never informed of his Miranda rights. (See Defendant's Motion to Suppress at p. 2, 4-5 and defendant's Affidavit identified as Exhibit A in defendant's Motion to Suppress.) The motion should be denied because Marda has failed to establish any basis to support his claim that his statement was involuntary, and in the totality of the circumstances the evidence demonstrates that the defendant's will was not overborne. For the reasons detailed herein, the motion to suppress should be denied without an evidentiary hearing.

## BACKGROUND[1]

On March 12, 2004 at approximately 8:20 p.m., Boston Police Officers armed with a search warrant for Marda's and for Marda's residence of 36 Ridgewood Street, Apartment #2, Dorchester, observed Marda exit that residence and enter into his motor vehicle. The officers, who had not yet executed the search warrant, stopped Marda's motor vehicle, orally advised him of his Miranda rights and had conversation with him. Detective Robert England advised the defendant of his Miranda rights orally when

---

[1] The facts set forth in this opposition come from the report of Boston Police Officer Robert England that has previously been attached to Defendant's Motion to Suppress as Exhibit B, as well as the Affidavit of Sergeant Detective Al Terestre attached as Government's Exhibit A, Affidavit of Officer Robert England attached as Government's Exhibit B and Boston Police Department Arrest/Prisoner Booking Form attached as Government's Exhibit C.

he first stopped the motor vehicle and before any conversation.
Those rights were given to the defendant in English and he
acknowledged them.  He made no incriminating statement to the
police at that time.  The police then returned to 36 Ridgewood
Street, apartment #2, with Marda and the search warrant.  After
knocking and announcing themselves and receiving no answer, the
police made a forceful entry into that second floor apartment and
executed the search warrant and located two other individuals
inside the apartment.  The defendant and the other two
individuals were brought into were in the kitchen of that
apartment, and all three were orally advised of their Miranda
rights in English by Sergeant Detective Terestre via a card that
he carried on his person that contained the Miranda warnings on
it.  After he read the rights to the defendants, each defendant
individually acknowledged those rights.  The defendant made no
incriminating statement at that time.  Police officers then
proceeded to execute the search warrant and several items were
seized including: a large amount of cocaine, digital scale, small
silver scale, marijuana, a tech 9 mm. firearm with 36 rounds of
ammunition in the magazine, additional rounds of ammunition, a
photograph as well as personal papers of the defendant, a
cellular phone, and a set of keys.  At some point thereafter, all
three defendants were transported to Boston Police Department and
booked separately. (See Exhibit B of Defendant's Motion to

Suppress.)

At the station, Sergeant Detective Terestre brought the
defendant from his cell to the booking area where he again orally
advised the defendant of his Miranda rights in English.  This was
done by Sgt. Det. Terestre reading the rights that were posted on
the wall of the booking area behind where the defendant was
standing handcuffed.  The defendant turned around to face the
wall where the rights were located when Sgt. Det. Terestre was
reading the rights to the defendant.  While he was reading the
rights from the wall to the defendant, the defendant was moving
his head back and forth from left to right during this time as
well.  The defendant then acknowledged those rights.  After
acknowledging the rights, Sgt. Det. Terestre asked the defendant
if he had a license to carry a firearm and the defendant replied
'no'.  Sgt. Det. Terestre then asked the defendant where the
firearm came from and the defendant made the statement that he
had the 'tech 9 because he had problems with a group down the
street and [he] needed it for his protection'.  It is this
statement that defendant Marda now seeks to suppress.  After Sgt.
Det. Terestre advised Marda of his <u>Miranda</u> rights at the booking
area, Sgt. Det. Terestre left that area and Officer Brian Mulrean
processed the defendant.  Officer Mulrean provided a written
document entitled Prisoner Booking Form that contains a written
Waiver of Miranda Rights Form.  Marda was given an opportunity to

4

review the waiver form and then defendant Marda signed said form
and it was also signed by officer Mulrean (See Affidavit of Sgt.
Det. Terestre, attached as Exhibit A and Prisoner Rights Booking
Form attached as Government's Exhibit C).

**ARGUMENT**

I.    **THE DEFENDANT'S STATEMENTS WERE NOT OBTAINED IN
      VIOLATION OF HIS CONSTITUTIONAL RIGHTS**

1.    **Marda received his Miranda rights and waived them
      before providing a statements**

Marda contends that the statement(s) he made at booking was
obtained in violation of his constitutional rights because the
statement was not voluntary.  Marda's statement(s) to the police
in the booking area came after they advised him of his <u>Miranda</u>
rights multiple times and after he knowingly, intentionally, and
voluntarily waived those rights.  An involuntary statement
violates due process and its admission into evidence requires
reversal of the conviction although there would have been
sufficient evidence to convict. <u>Jackson v. Denno</u>, 378 U.S. 368,
376 (1964).  The voluntariness of a statement depends on "whether
the will of the defendant [was] overborne so that the statement
was not his free and voluntary act, and that question [is] to be
resolved in light of the totality of the circumstances." <u>Bryant
v. Vose</u>, 785 F.2d 364, 367-68 (1st Cir. 1986), citing <u>Procunier
v. Atchley</u>, 400 U.S. 446, 453 (1971); <u>see also</u> <u>United States v.
Holmes</u>, 632 F.2d 167, 168-69 (1st Cir. 1980).

5

The government bears the burden to prove voluntariness by a
preponderance of the evidence. Lego v. Twomey, 404 U.S. 477
(1972).  The court must "'examine the entire record and make an
independent determination of the ultimate issue of
voluntariness.'" United States v. Bienvenue, 632 F.2d 910, 913
(1st Cir. 1980) (quoting Beckwith v. United States, 425 U.S. 341
(1976)).

The Supreme Court indicated more than a century ago, in a
case still cited as controlling precedent on the voluntariness of
confessions, that for a confession to be voluntary it "must not
be extracted by any sort of threats or violence, nor obtained by
any direct or implied promises, however slight, nor by the
exertion of any improper influence ..." United States v. Bram,
168 U.S. 532 (1897).[2]  An express waiver of the right to remain
silent or of the right to counsel is not required, the waiver may
be implied.  North Carolina v. Butler, 441 U.S. 369, 373 (1990).
Truly voluntary statements must have been: I) "a product of a
free and deliberate choice rather than intimidation, coercion, or

_____

[2] See e.g., Malloy v. Hogan, 378 U.S. 1, 6-7 (1964); Miranda
v. Arizona, 384 U.S. at 461-62; Brady v. United States, 397 U.S.
742, 754-55 (1970); Hutto v. Ross, 429 U.S. 28, 30(1976)(all
citing to Bram, on voluntariness of confession).  "The
determination of whether a valid waiver of right to counsel or to
remain silent was made depends on whether the waiver was knowing
and intelligent, given the totality of the circumstances and the
facts surrounding the particular case, 'including the background
experience, and conduct of the accused.'" United States v.
Garcia, 938 F.2d 1160, 1169 (1st Cir. 1993) (quoting North
Carolina v. Butler, 441 U.S. 369, 374-375(1990)).

deception;" and ii) "made with a full awareness both of the
nature of the right being abandoned and the consequences of the
decision to abandon it.  <u>Colorado v. Spring</u>, 479 U.S. 564, 573
(1987)(quoting <u>Moran v. Burbine</u>, 475 U.S. 412, 421 (1986)).

**2.    Marda's statement(s) following his arrest on
      March 12, 2004, was volunteered**

Marda's involuntariness claim is based exclusively on the
contention that he was never given his Miranda warnings and that
the police interrogated him.  This claim is meritless as the
evidence demonstrates that the statement was made after Marda
knowingly, intelligently and voluntarily waived his <u>Miranda</u>
rights.

It is axiomatic that custodial interrogation of any
individual requires <u>Miranda</u> warnings.  <u>United States v. Taylor</u>,
985 F.2d 3, 7 (1st Cir. 1993); <u>United States v. Maguire</u>, 918 F.2d
254, 262 (1st Cir. 1990), <u>cert</u>. <u>denied</u>, 499 U.S. 950 (1991).
Interrogation includes the asking of direct questions, but also
"any words or actions on the part of the police (other than those
normally attendant to arrest and custody) that the police should
know are reasonably likely to elicit an incriminating response
from the suspect." <u>Rhode Island v. Innis</u>, 446 U.S. 291, 301
(1980).  Even if police actions or inquiries are not clearly
interrogation, they may still constitute the "functional
equivalent" of interrogation.  <u>Id</u>. at 302.  The "functional
equivalence" test turns on an objective assessment of whether a

7

reasonable person in the same situation would consider the police
conduct interrogation.  <u>Id</u>. at 301-02.[3]

Any words and/or actions of the officers would not
constitute the "functional equivalence" of interrogation.  The
objective standard of the "functional equivalence" test is not
met by the facts of this case.  The police activity does not even
approach the conclusion that the officers attempted to elicit an
incriminating response from Marda.

There is no evidence that the officers deliberately
attempted to circumvent the <u>Miranda</u> requirements, coerce,
pressure, threaten, or apply undue influence in an attempt to
elicit incriminating statements from Marda.  <u>See</u> <u>Missouri v.
Seibert</u>, 542 U.S. 600 (2004).

Marda's waiver satisfies both requirements of <u>Colorado v.
Spring</u> and therefore his statement was validly obtained.
Moreover, <u>See</u> <u>Colorado v. Spring</u>, 479 U.S. 564, 574 (1987)("the
defendant alleges no coercion of a confession by physical
violence or other deliberate means calculated to break [his]
will,")(quoting <u>Oregon v. Elstad</u>, 470 U.S. 298, 312 (1985)).

Marda also claims without support that the police officers
coerced him by repeatedly saying that the gun belonged to Marda

---

[3]    <u>See</u> <u>also</u> <u>Taylor</u>, 985 F.2d at 7, 8 (a police officer's
mere awareness that a suspect may make an incriminating statement
does not establish the "functional equivalent" of interrogation;
<u>Mauro</u>, 481 U.S. at 528-29; <u>Arizona v. Mauro</u>, 481 U.S. 520 (1987).

although he repeatedly said it did not. (See Defendant's
Affidavit attached as Exhibit A in Motion to Suppress.) There
was no confrontation. However, even if there was,
"[c]onfrontation with incriminating evidence does not amount to
coercion." <u>Johnson v. Hall</u>, 605 F.2d 577, 582 (1st Cir. 1979).
In <u>Johnson</u>, the defendant sought to suppress his confession made
after he was in custody and awake all night without receiving the
benefit of his <u>Miranda</u> rights. <u>Johnson v. Hall</u>, 605 F.2d 577,
580-581 (1st Cir. 1979). The court acknowledged that the
defendant had a sixth grade education, an I.Q. of only 86 and was
in the presence of as many as 100 police officers while at the
station. <u>Id</u>. However, the court reasoned that the defendant was
also not susceptible to police persuasion due to his frequent
contact with the police and questioning. <u>Id</u>. at 581-582.[4] The
court held that in the circumstances of the case, the confession
was voluntary: "Finally, in light of the relatively short time
between arrest and confession, we accord little weight to the
facts that appellant and not slept and had eaten little".

In the totality of circumstances, the court should reject
the defendant's baseless assertion that his statement was
coerced. <u>See</u> <u>United States v. Garcia</u>, 938 F.2d 1160, 1169 (1st
Cir. 1993).

---

[4]    Marda was also no stranger to the police or to
questioning given his criminal history. See MA and FLA board of
probation records attached as Government's Exhibit A.

Marda's statement was volunteered and therefore not subject
to <u>Miranda</u> warnings.  <u>Miranda v. Arizona</u>, 384 U.S. 436, 478
(1966) ("Any statement given freely and voluntarily without any
compelling influence is, of course, admissible in
evidence...Volunteered statements of any kind are not barred by
the Fifth Amendment...").

**3. Marda knew his Miranda rights and the consequences
of waiving them**

Marda's waiver also meets the second requirement of
<u>Colorado v. Spring</u> because he was well aware of the rights that
he waived and the consequences waiving them.  The police warned
Marda of his <u>Miranda</u> rights at the time they stopped his car, in
the kitchen of the apartment when the search warrant was executed
and again during the booking procedure that evening.  These
rights were given prior to Marda making the statement at booking
that is at issue.  The only statement Marda made was post-Miranda
in the booking area.  Marda was apprised of his rights and
shortly after receiving them, he waived those rights by his
actions of making incriminating statements.  There is no basis
for suppressing the statement(s).

In light of the <u>Miranda</u> warnings orally that were given to
the defendant that evening, Marda knew the rights that he was
waiving.  The court should take the words of Marda at the
relevant time in deciding his intentions.  Here, moments prior to
giving the statement Marda acknowledged and voluntarily waived

10

his rights and then made the statement.

Marda also knew of the consequences of making that statement. The statement itself demonstrates Marda's awareness of the consequence of abandoning his rights. The court should also reject the defendant's contention that he was not properly apprised of his rights or aware of the consequences of his statement to the officer(s).

### 4. Marda's Statement(s) Resulted from a Free and Deliberate Choice to Speak with the Police

Marda intelligently, knowingly, and voluntarily waived his right to remain silent. Marda knew his rights, but decided to speak to the police anyway. There is no evidence to suggest that the police subjected Marda to any coercive, deceptive, or intimidating techniques as part of an attempt to elicit incriminating responses from Marda. No evidence in the record supports a conclusion that Marda desired to remain silent or that his will to do so was overborne. The defendant's assertion that his statement did not follow a knowing, intelligent, and voluntary waiver of his Fifth Amendment rights should be rejected.

### II. THERE IS NO NEED TO CONDUCT AN EVIDENTIARY HEARING

Marda has not established any right to an evidentiary hearing on his motion. Marda's response to this will undoubtedly be that he has contested the government's claims by simply filing his affidavit and that an evidentiary hearing must therefore be

held.  In the particular facts of this case (and the specific infirmities of that affidavit), this argument also fails.

"[A] criminal defendant has no absolute or presumptive right to insist that the district court take testimony on every motion." United States v. Panitz, 907 F.2d 1267, 1273 (1st Cir.1990).  Evidentiary hearings are required only when a defendant alleges facts that are "sufficiently definite, specific, detailed, and nonconjectural, to enable the court to conclude that a substantial claim is presented." United States v. Lewis, 40 F.3d 1325, 1331 (1st Cir. 1994).[5]

Viewed against these principles, the conclusory allegations of Marda's affidavit fail to establish any basis for relief or any basis on which an evidentiary hearing should be held.  Marda has failed to file anything satisfying the showing needed for this Court to hold an evidentiary hearing.

Marda's affidavit is also significant for what it does not contain.  Something more than mere allegations are required to

---

[5]  See also United States v. McGill, 11 F.3d 223, (1st Cir. 1993) ("Courts are busy places.  Not surprisingly, then, evidentiary hearings on motions are the exception, not the rule. We have repeatedly stated that, even in the criminal context, a defendant is not entitled as of right to an evidentiary hearing on a pretrial or posttrial motion"); United States v. Staula, 80 F.3d 596 (1st Cir. 1995)("A hearing is required only if the movant makes a sufficient threshold showing that material facts are in doubt or dispute, and that such facts cannot reliably be resolved on a paper record.")

12

justify an evidentiary hearing.[6]

CONCLUSION

For the foregoing reasons, the defendant's motion to suppress his statement to the Boston police officers should be denied without an evidentiary hearing.

```
                         Respectfully submitted,
                         MICHAEL J. SULLIVAN
                         United States Attorney
                  By:
                         s/ Suzanne Sullivan
                         SUZANNE SULLIVAN
                         Assistant U.S. Attorney
```

CERTIFICATE OF SERVICE

This is to certify that I have this day served upon the persons referenced below a copy of the foregoing document by efiling:
                  All counsel of record.

This 29th day of August, 2007.

```
                         /s/ Suzanne Sullivan
                         SUZANNE SULLIVAN
                         ASSISTANT U.S. ATTORNEY
```

---

[6]    See also United States v. Castellano, 610 F.Supp. 1359, 1439 (S.D.N.Y.1985) ("A defendant who seeks to suppress evidence bears the burden of showing that disputed issues of material fact exist before an evidentiary hearing is required.  No evidentiary hearing need be held where a defendant's allegations are general and conclusory or are based upon suspicion and conjecture"); United States v. Sophie, 900 F.2d 1064, 1071 (7th Cir. 1990) (requiring an evidentiary hearing "only if the party requesting the hearing raises a significant, disputed factual issue"); United States v. Harrelson, 705 F.2d 733 (5th Cir.1983)("general or conclusory assertions, founded upon mere suspicion or conjecture, will not suffice.")

13