UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL NO. 04-10278-RGS

UNITED STATES OF AMERICA

v.

PAUL MARDA

FINDINGS OF FACT, RULINGS OF LAW,
AND ORDER ON DEFENDANT'S
MOTIONS TO SUPPRESS

July 21, 2008

STEARNS, D.J.

Defendant Paul Marda[1] seeks to suppress an incriminating statement made to a Boston police officer prior to his being booked on March 12, 2004. Marda alleges that the statement was elicited in violation of his rights under the Fifth Amendment to the United States Constitution. More specifically, he claims that he was interrogated without the benefit of the prior warnings mandated by Miranda v. Arizona, 384 U.S. 436 (1966). See Dickerson v. United States, 530 U.S. 428 (2000). An evidentiary hearing on the motion was held on April 15 and 16, 2008.[2] For the reasons explained, the motion will be DENIED.

FINDINGS OF FACT

---

[1] Marda also uses the name Nathaniel Robinson.

[2] The hearing was originally to be held in the fall of 2007, but was continued several times at defendant's request. The case was further delayed when Marda sought the removal of his court-appointed attorney, a request that the court allowed on December 18, 2007, after a hearing.

Based on the credible testimony offered at the hearing, I make the following findings of fact.

1. In the early evening of March 12, 2004, Boston police officers arrived at Marda's residence, apartment 2, 36 Ridgewood Street, in Dorchester, Massachusetts. The officers had obtained warrants for the search of Marda's apartment and his person. As the officers arrived at the scene, they observed Marda briefly enter the building, and then leave in his vehicle. Marda was stopped a short distance away by detective Robert England. Detective England orally informed Marda of his Miranda rights. He then explained that he had a warrant to search Marda's person. Marda said nothing incriminating in response. He was placed in England's cruiser and driven back to the Ridgewood Street apartment.[3]

2. Entering the apartment, police encountered two of Marda's guests, one of them Johanne Dumond, Marda's girlfriend. Marda and the two guests were made to sit at the kitchen table while police searched the apartment. Sergeant Detective Albert Terestre, who kept watch over the suspects, read the Miranda rights collectively to the group from a Miranda card. None of the three made incriminating statements. The search yielded a Tech-9 firearm, ammunition, a quantity of drugs, and assorted drug paraphernalia. Marda

---

[3] Marda maintains that he was not taken to the apartment, but instead was driven directly to Boston Police Station C-11 (C-11). While I find the police version to be accurate (it is corroborated by England's testimony and his contemporary incident report), the dispute is immaterial as Marda does not challenge the legality of his arrest, nor do the police contend that Marda made any incriminating statements while he was detained at the apartment. In his memorandum in support of the motion to suppress, Marda's counsel also places him in the apartment during the search.

and the two apartment visitors were placed under arrest and transported separately to C-11 for booking.[4]

3. At the station, Terestre escorted Marda to the booking desk. On the wall behind the desk was a large placard displaying the Miranda rights. Terestre recited the rights to Marda by reading from the placard. Marda acknowledged his understanding of the rights.[5] Terestre then asked Marda if he had a license to carry a firearm. Marda replied "no." He also stated that he had acquired the Tech-9 because he "needed it for his protection."

4. Marda was booked by Detective Brian Mulrean. Although Mulrean has no independent recollection of booking Marda, his standard practice (pursuant to Department regulations) was to complete an Arrest Booking Form, which among other things, includes an inventory of the personal property taken from a prisoner. Mulrean's routine was to ask the person being booked to sign the form in two places. The first signature line is in a shaded box exhibiting the Miranda rights in large print. Over the prisoner's signature line is the question: "Do you understand what I have told you?" and the acknowledgment, "Yes, I understand." Marda signed the Miranda box on the Form (using the name Nathaniel

---

[4]Dumond testified that she did not recall Terestre reading the Miranda rights while the group was assembled in the kitchen. Dumond also testified that Marda was not present at the apartment during the search. She claimed that the two others in the apartment were Barry Robinson, the defendant's brother, and Robinson's (unnamed) girlfriend. Again, I credit the police version of events as it is corroborated by Detective England's report, which is further corroborated by the fact that Dumond was the only female arrested and booked. Again, because no incriminating statements were made at the apartment, the dispute over Marda's presence is somewhat besides the point.

[5]Marda is an experienced defendant who had been previously arrested on at least two occasions for possession of weapons and drugs. On cross-examination, Marda acknowledged his prior familiarity with the Miranda warnings.

Robinson). The box also contains the legend, "Informed Rights by Officer," followed by the typed name "BPD 10142, Mulrean, Brian," and the signature "Brian Mulrean." Below the Miranda box is a second prisoner signature line underneath the list of the prisoner's personal property. Marda signed on this line as well (again as Nathaniel Robinson).[6]

5. The signing of the Miranda acknowledgment occurred after Marda had made the incriminating statement to Sergeant Detective Terestre.[7]

## RULINGS OF LAW

The Fifth Amendment provides that "no person . . . shall be compelled in any criminal case to be a witness against himself." While "admissions of guilt by wrongdoers, if not coerced, are inherently desirable," United States v. Washington, 431 U.S. 181, 187 (1977), the Supreme Court in Miranda v. Arizona, 384 U.S. 436 (1966), "presumed that interrogation in certain custodial circumstances is inherently coercive and held that statements made under those circumstances are inadmissible unless the suspect is specifically informed of his Miranda rights and freely decides to forgo those rights." New York v. Quarles, 467 U.S. 649, 654 (1984). The warnings which are familiarly known as the "Miranda rights," are not constitutionally compelled, but have nonetheless acquired a "constitutional underpinning." Dickerson, 530 U.S. at 440 n.5. The warnings are as follows:

---

[6]Marda's contention that he believed he was twice signing an acknowledgment of the inventory of his property I do not find credible.

[7]Marda, in his testimony, insisted that Terestre questioned him about the gun before the booking.

> [A suspect] must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

Miranda, 384 U.S. at 479.

The only issue raised by Marda's motion to suppress concerns the timing of his receipt of the Miranda warnings during his booking. Marda contends that if the warnings were given at all, it was after he had made the incriminating statement about the Tech-9. The court finds otherwise as a matter of fact. Nonetheless, the finding makes no difference to the outcome of the motion.

Marda was initially stopped by police shortly after 8:00 p.m. The booking at C-11 occurred ninety minutes later. Regardless of whether the giving of the Miranda rights at the station preceded or followed the incriminating statement, during the hour and one-half interval between being stopped and being booked, Marda twice received Miranda warnings – first from Detective England and then later from Sergeant Detective Terestre – and twice invoked his rights by remaining silent, both at the time of his arrest and later at the kitchen table of the apartment.

"[T]here is no requirement that an accused be continually reminded of his rights once he has intelligently waived them." United States v. Anthony, 474 F.2d 770, 773 (5th Cir. 1973), (internal citation omitted). Generally, where there has been a significant lapse of time between initial Miranda warnings and inculpatory statements, "the ultimate question is: Did the defendant, with a full knowledge of his legal rights, knowingly and intentionally

5

relinquish them?" Miller v. United States, 396 F.2d 492, 496 (8th Cir. 1968).  See also Roy v. Hall, 521 F.2d 120, 123-124 (1st Cir. 1975).

> Miranda does not necessarily require that a suspect be warned anew each time he is questioned.  See e.g., Guam v. Dela Pena, 72 F.3d 767, 769-70 (9th Cir. 1995) (finding that a fifteen-hour delay between waiver and statement does not require new warning and waiver).
>
> Instead, the question whether a suspect needs to be warned when questioning resumes boils down to whether the suspect can and does effectively waive his Miranda rights at the second questioning.  As Judge McClure has aptly put it, the question of whether a time lapse renders Miranda warnings "stale" may be reduced to answering two questions: (1) At the time the Miranda warnings were provided, did the defendant know and understand his rights?  (2) Did anything occur between the warnings and the statement, whether the passage of time or other intervening event, which rendered the defendant unable to consider fully and properly the effect of an exercise or waiver of those rights before making a statement to law enforcement officers?  United States v. Vasquez, 889 F. Supp. 171, 177 (M.D. Pa. 1995).

United States v. Pruden, 398 F.3d 241, 246-247 (3d Cir. 2005) (twenty hour interval between warnings and confessions, experienced defendant).[8]  See also Dela Pena, 72 F.3d at 769-770 (rejecting the suggestion that once a defendant is placed in custody, previously administered Miranda warnings are rendered ineffective).  As there is no real question but that Marda knew his rights and because nothing happened during the ninety minutes between his arrest and booking to undermine his understanding of or his ability to exercise those rights, there is no basis for suppressing his statement.

## ORDER

For the foregoing reason, Marda's motion to suppress his statement is DENIED.

---

[8]Marda, it will be recalled, was not a novice when it came to the Miranda warnings.

SO ORDERED.

/s/ Richard G. Stearns

_____
UNITED STATES DISTRICT JUDGE